MARY A. FEENEY, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, January 14, 1907.

1. REMOVAL OF CAUSES: Remanding: Jurisdiction: Duty of State Court. Where the Federal Court remands a removed cause to the State court such order neither originates jurisdiction in the State court nor restores one lost by that court, and the State court has no power to review the ruling of the Federal Court but can only proceed to exercise the jurisdiction which the latter court in effect declares it has no proper occasion to supersede.

2. NEGLIGENCE: Care: Humanitarian Doctrine. Reasonable care largely depends on the circumstances of a given situation, but in any case where the actor has at his command the means of avoiding the injury to one imperiled by his act, but willfully, recklessly or even negligently refused to acknowledge any obligation to the endangered person, he is culpable, notwithstanding the plea that he was doing what he had a lawful right to do, or that the injured person had negligently placed himself in the pathway of a force lawfully employed.

3. ———: **Street Railroads: Humanitarian Doctrine: Traveler: Proximate Cause.** A driving party on the street observed a dummy engine on the street railroad track in front of them. They stopped and consulted whether best to leave the street, but observed that the engine was standing and concluded they could drive safely by. As they approached the train where the street was too narrow for safe turning, the engine began making a very unusual noise in blowing up the fire. The driver carefully proceeded, thinking he could pass the engine in safety, but on approaching the team became frightened and ran away, injuring the plaintiff. The engineer and fireman made no observation of the approach of the team and could easily have stopped the blower making the noise. The team was well broken. *Held*, the engineer and fireman were negligent and the question of contributory negligence of the driver and his mistake, if a mistake, in pursuing his way cannot cure their negligence, which was the proximate cause of the injury.

4. ———: ———: ———: ———: **Highway: Jury.** Held, *arguendo*:
(1) Drivers on a public road cannot recover for the fright of unruly horses caused by the high speed or the usual noise necessary to running a train.
(2) That parties in charge of trains must refrain from making unusual, unnecessary and terrifying noises.
(3) The operators of trains near public roads cannot ignore the presence of others on the street or pursue their course in a heedless manner, but must look out for travelers.
(4) Though certain noises may be necessary to the operation of an engine on a street, it cannot be pursued to the injury of travelers on the street where its momentary cessation may save the traveler from impending danger.
(5) And under the evidence the question whether the fright of the horses was caused by the noise of the engine and whether by the exercise of reasonable care the trainmen could have discovered plaintiff's peril in time to have avoided the injury by stopping the noise, was for the jury.

5. ———: ———: ———: ———: ———: ———. *Held*, the negligence of the driver on the evidence in the case has no foundation in fact on the finding of the jury; but where a party is caught in a trap and confronted with danger, a display of poor judgment will not cure the negligence of the party causing the injury; and under the evidence the negligent failure of the trainmen supersedes all other acts of negligence and presents itself as the sole producing cause of the injury.

Appeal from Clay Circuit Court.—*Hon. Joshua W. Alexander*, Judge.

AFFIRMED.

*J. L. Minnis* and *Frank P. Sebree* for appellant.

(1) The court committed error in refusing to give the demurrer to the evidence offered by defendant. There was no negligence proven against the defendant. 2 Thompson on Negligence, sec. 1922; Brown v. Railroad, 89 Mo. App. 192; Railroad v. Clarke, 35 Neb. 867; Railroad v. Walkenshaw (Kan.), 81 Pac. 463; Railroad v. Fike (Ind.), 74 N. E. 636; Webb v. Railway, 202 Pa. St. 511; Railroad v. Stinger, 78 Pa. St. 219; Farley v. Harris, 186 Pa. St. 440; Cin. Ind., etc., v. Gaines, 104 Ind. 526; Yingst v. Lebanon, 167 Pa. St. 438; Huhn v. Railroad, 51 Cal. 605; Lamb v. Railroad, 140 Mass. 79; Favor v. Railroad, 114 Mass. 350; Railroad v. Burkhart, 83 M'd. 516; Stanton v. Railroad, 91 Ala. 382; Howard v. Railroad, 156 Mass. 159; District of Columbia v. Moulton, 182 U. S. 576; Cothron v. Cudahy, 98 Mo. App. 344; Harper v. Terminal Co., 187 Mo. 586; Trigg v. Land Co., 187 Mo. 227; Goransson v. Mfg. Co., 186 Mo. 301. (2) The plaintiff herself was negligent, and the court committed error in not sustaining the demurrer to the evidence on this ground. Marsh v. Railroad, 104 Mo. App. 588; Beach on Contributory Neg., sec. 115; 3 Elliott on Railroads, sec. 1174; Township v. Anderson, 114 Pa. St. 643; Brickell v. Railroad, 120 N. Y. 290; Dean v. Railroad Co., 129 Pa. St. 514; Smith v. Railroad, 87 Me. 339; Miller v. Railroad, 128 Ind. 97; Sluder v. Transit Co., 189 Mo. 143; Sanguinette v. Railway, 196 Mo. 466; 95 S. W. 386; Bush v. Railroad, 62 Kan. 716; Donnelly v. Brooklyn City, 109 N. Y. 16; Railroad v. McLeod, 78 Miss. 334, 84 Am. St. Rep. 630; Railroad v. Schmidt, 81 Ind. 264; Whitney v. Railroad, 69 Me. 208. (3) The court erred in giving instructions numbered one and two asked by plaintiff. They ignore the negligence of plaintiff, and authorize a verdict for her, notwithstanding her negligence. Holden v. Railroad, 177 Mo. 465;

Railroad v. Bentz, 38 Ill. App. 488; Railroad v. Kutac, 72 Tex. 642; Lapsley v. Railroad, 50 Fed. 172. (4) The lower court was without jurisdiction to try the case. Moon on Removal of Causes, sec. 157, p. 448, sec. 204, p. 637; Powers v. Railroad, 169 U. S. 92; Enders v. Railroad, 101 Fed. 202.

*Craven & Moore* for respondent.

(1) There was evidence in the case that the noise of defendant's engine was unusual and unnecessary. Brown v. Railroad, 89 Mo. App. 192; Hallem v. St. Louis, 176 Mo. 606; Phelen v. Granite P. B. Co. (Mo.), 91 S. W. 440; Oates v. Railroad, 168 Mo. 544; McGrew v. Railroad, 32 Tex. Civ. App. 265; Hudson v. Railroad, 4 Bush. 303; Ayers v. Railroad, 63 N. J. L. 416; Mitchell v. Railroad, 100 Tenn. 329; Presby v. Railroad, 66 N. H. 615; Railroad v. Bennett, 59 Pa. 259; Flynn v. Railroad, 169 Mass. 305; Railroad v. Boettcher, 131 Ind. 82. (2) The burden of proof was on defendant to show that the necessity for making the noise was so urgent as to justify it. Mitchell v. Railroad, 100 Tenn. 329; Railroad v. Bennett, 59 Pa. 259. (3) Injury cannot be excused on grounds of necessity, when necessity is produced by former negligence of defendant. Brooks v. Railroad, 35 Mo. App. 578; Amestrout v. Railroad, 1 Mo. App. 162; Dunkman v. Railroad, 95 Mo. 246. (4) Plaintiff was not guilty of contributory negligence and defendant's instructions thereon were properly refused. Dickson v. Railroad, 104 Mo. 503. (5) Appellant's jurisdictional question is not in this case. Walker v. Railroad, 92 S. W. 88.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff had judgment and defendant appealed.

The action was brought in the circuit court of Clay

county. Defendant filed a petition and bond for removal to the circuit court of the United States. The cause was transferred, but, on the motion of plaintiff, was remanded to the State court on the ground that the affidavit and bond for removal were not filed in proper time.

After this, defendant filed an amended answer in the State court in which, among other defenses, it challenged the jurisdiction of that court, asserting, in effect, that the removal to the Federal court was timely and that the latter tribunal was vested with exclusive jurisdiction to hear and determine the cause. This contention is reiterated here, but we find it to be without merit. The effect of an order to remand is neither to originate a jurisdiction in the State court nor to restore one lost by that court, but to put an end to the interruption of the jurisdiction which obtained therein before the institution of the proceeding to remove. The State court has no power to review or correct the rulings of the Federal court in remanding a cause, but must proceed to exercise the jurisdiction which the latter court in effect declares it has no proper occasion to supersede. [Walker v. Railroad, 193 Mo. 453, 92 S. W. 83; Black's Dillon on Removal of Causes, sec. 225; Tilley v. Cobb, 56 Minn. 295.]

On the merits of the case, the principal questions arise from defendant's insistence that an instruction in the nature of a demurrer to the evidence should have been given. Excelsior Springs is the terminus of one of defendant's railroad lines and is on the line of the Chicago, Milwaukee & St. Paul Railroad Company. The yards and stations of the two companies, which are about a mile apart, are connected by a dummy railroad owned and operated by defendant. The track of this connecting road is up grade from defendant's station to a point three hundred or four hundred yards from the Milwaukee station and from there on it runs down grade. It is laid in public streets of the city. From defendant's station, it passes along Dunbar avenue to the point where

that thoroughfare merges into Kimball avenue and thence along the latter street. The crest of the hill is near the point where the two avenues unite. Kimball avenue is eighty feet wide. The east twenty-five feet of its width is occupied by the railroad, leaving fifty-five feet for the use of vehicles and pedestrians. It is a part of one of the main arteries of travel between the city and country and is much used.

Plaintiff was injured near the junction of the two avenues. As the guest of her son-in-law, a Mr. Janney, she was riding in the rear seat of a two-seated surrey, which was being drawn by a team of rather spirited horses. Mr. Janney acted as driver and other occupants of the vehicle were his wife and a Mrs. Templeton. The party was returning along Kimball avenue from a pleasure drive in the country. They had passed the Milwaukee station and were approaching the junction of the two avenues. When about two hundred yards distant from that point, they observed the dummy engine used by defendant standing on the track about two hundred yards ahead of them. Fearing that the engine might be approaching and not wishing to meet it, Mr. Janney stopped the team and discussed with his companions the advisability of turning around and driving back, but, observing that the engine was not moving and knowing that frequently it had to stop on the up grade to gain power before it could proceed, he concluded to drive forward, deeming it safe to attempt to pass the engine while it was stationary. To this point, none of the occupants of the vehicle noticed that the engine was making a loud noise, nor did the horses exhibit any signs of fright. After starting forward, the horses became restive and then it was that plaintiff and her companions became aware that the engine was making a very loud and, as they describe it, an unusual noise. They were then, owing to the narrowness of the usable roadway, in a position where they could not turn around

without backing the team and this, Mr. Janney considered impracticable. He still thought he could control the horses and drive by the engine in safety, but when they reached a point nearly opposite the engine the fright of the animals, which all along had been increasing, caused them to become unmanageable. They ran away, upset the vehicle and plaintiff was injured.

The engine, a small one propelled by steam, was hauling a box car loaded with fifty thousand pounds of wheat to the Milwaukee road. The load was too heavy for the capacity of the engine and it had been compelled to stop a number of times to make steam and was engaged in that work at a point about thirty feet from the top of the hill when the surrey approached. To make a quick and hot fire in the fire-box a strong draft is required and this is made by the use of a blower—a small pipe through which steam is forced into the smokestack. When in operation to its full capacity, the blower produces a very loud, irritating and continuous noise and it was this noise that frightened the horses. The engineer and fireman were on the engine at the time and the conductor was on the freight car. The first two paid no attention to the wagon road and did not know of the plight of the occupants of the surrey. The conductor says he noticed the team from the time it first took fright, but the time was too short for him to warn the engineer. The noise continued until after the injury occurred. Mr. Janney had hired the team from a liveryman in Excelsior Springs and all of the occupants of the vehicle agree that the horses behaved well during the drive and gave no indication of viciousness. The liveryman testified that they were well broken and had been thoroughly accustomed to engines and cars by service in drawing a hack that plied between the railroad stations and various parts of the city.

The foregoing statement embodies the facts most favorable to the cause of action asserted. On the part

of defendant, there was evidence tending to show that the use of the blower on this grade was usual and necessary; that the noise made on this occasion was no different from that usually made in using the blower; that when the vehicle stopped the horses were trembling and two pedestrians, section men, who chanced to be there, went to their heads and advised Mr. Janney against attempting to drive forward; that this advice was unheeded and Mr. Janney drove on and, when the fright of the horses increased, attempted to whip them by the engine and that the roadway was wide enough at all places for the turning of the team without backing. All of this testimony was contradicted by plaintiff's witnesses and in the consideration of the demurrer to the evidence we must reject it and accept as proven the facts most favorable to plaintiff.

Defendant insists: first, that these facts and the inferences reasonably to be drawn from them do not serve to inculpate it in law, and, second, that they do show negligence in law on the part of plaintiff which should prevent her recovery. Do the facts disclosed tend to show that defendant failed to observe the care that would have characterized the conduct of an ordinarily careful and prudent person in its situation?

One of the elementary rules by which conduct is to be measured imposes the duty on every one of observing reasonable care and prudence while in the exercise of lawful right. What is reasonable care largely depends on the peculiar circumstances of the given situation, but in every case where we find that the actor had at his command the means and reasonable opportunity of avoiding the infliction of an injury to one imperilled by his act, but willfully, recklessly or even negligently refused to acknowledge any obligation to the endangered person, we hold him culpable in law notwithstanding his plea that he was doing what he had a lawful right to do or that the injured person had negligently placed

himself in the pathway of a force lawfully employed.

Did defendant owe plaintiff any duty to keep a lookout for her approach and on discovering her peril to stop the noise that was frightening the horses? It must be conceded that railroad companies in running their trains in the country over their own property are under no duty where wagon roads adjoin and run parallel to the right of way to reduce the speed of their trains or to refrain from the performance of acts necessary to the proper and legal operation thereof, even when they know that such acts are frightening horses on the public highway and endangering the safety of travellers. The reason for this rule is obvious. Railroad trains run by schedule and their delay means not only the disarrangement of a highly complicated business, in the proper conduct of which the public has a vital interest, but often endangers the lives and property of many people, so that a rule requiring them to be run along such places at a rate of speed so slow that a train could be stopped on the appearance of danger to the traveller on the wagon road certainly would result in the infliction of greater injury than would be avoided by its application. It is the business of persons driving on public roads to avoid being in close proximity to parallel railroad tracks during the passage of trains if their horses are unruly and, where a passing train is being operated in a usual manner, a person injured on the wagon road by the frightening of his horses cannot recover damages from the railroad company; and it may be added that in such cases the burden of proof is on the plaintiff to show that some unnecessary and unusual act on the part of the operators of the train was the immediate cause of his injury.

But the observance of reasonable care does impose a duty on the operators of trains in situations of this character. Knowing that people may be on the wagon road and that their horses may be caused to become un-

manageable by the making of unusual, unnecessary and terrifying noises, they must refrain from making such noises. Thus, in blowing the whistle or emitting steam unnecessarily, they place themselves in the attitude of being negligently indifferent to the rights of others and thereby violate the fundamental rules with which we premised this discussion. [Brown v. Railway, 89 Mo. App. 192.]

More strict were the demands of reasonable care in the present case than those we have been discussing. Defendant was using the public streets of the city in common with others, who were rightfully using the roadway for vehicles and pedestrians. The operators of its trains had no right to ignore the presence of others on the street or to pursue their course in a heedless manner. It was their duty to be on the lookout for danger to travellers and whenever it became apparent to a reasonable mind that one was in imminent danger from the operation of the engine and the means were at hand to avoid inflicting an injury, it was their duty reasonably to employ such means. [Eswin v. Railway, 96 Mo. 290; Hanlon v. Railway, 104 Mo. 381; Jennings v. Railway, 112 Mo. 268.] True defendant had the right to run its trains over the line at a reasonable rate of speed and in the usual and necessary manner and could indulge in the presumption that travellers, being charged with knowledge of the likelihood of encountering trains thus operated, would keep their horses under control, but, when it became obvious that a driver was losing control over his horses and that their fright was being caused by some act in the operation of the engine, which could be stopped without danger to others and, if momentarily discontinued, would prevent an injury to the occupants of the vehicle being drawn by the horses, the dictates of common humanity would impel the ordinarily careful, prudent person to discontinue the endangering act.

The engineer and fireman by their admission that

they paid no attention to the wagon road while the engine was emitting this nerve-racking noise convict themselves of negligence, whether or not the use of the blower and the noise made by it were usual and necessary. Grant that the act was necessary, it would shock even the dullest sense of humanity to say that the trainmen had the right to look with indifference at others going to destruction when by the simplest act and without danger to themselves or others they could remove the cause of the peril. It was for the jury to determine, as questions of fact, whether the fright of the horses was caused by the noise the engine was making and whether by the exercise of reasonable care the trainmen could have discovered the peril of plaintiff in time to have avoided the injury by the stopping of the noise.

We do not consider the argument tenable, that the noise of the blower is not shown to be the proximate cause of the injury. The fact, to which the owner of the horses testified, that they were well broken and were accustomed to being driven close to engines and cars, supports a reasonable conclusion that the mere presence of the standing engine did not frighten them. Every fact and circumstance points to the loud and incessant noise as the cause of the fright and it was its production that was the last culpable act in the chain of causation. The acts of the frightened horses have no place in that chain. They are but results of human culpability and, with the injury itself, are to be classed as natural effects of the producing cause. [Mitchell v. Railroad, 122 Mo. App. 50; Boyce v. Railway, 120 Mo. App. 168; Smith v. Telephone Co., 113 Mo. App. 429.]

Further, defendant argues that plaintiff was negligent in not insisting on alighting from the surrey after the horses began to show fright and before they became unmanageable and, because of this failure to exercise reasonable care for her own safety, it is insisted that the negligence of the driver, which defendant contends

is apparent, should be imputed to plaintiff. The main trouble with this position is, that it has no foundation in the facts most favorable to plaintiff to rest on, but is hypothecated on the testimony of defendant's witnesses which the jury discarded. Adopting the version of plaintiff and her witnesses, which we must do in this aspect of the case, both she and the driver were entirely blameless. They took the precaution of stopping the team when they were far enough away from the engine to beat a retreat had it been approaching them. Observing it standing still and noticing nothing out of the ordinary and having a well broken team, it would be an extremely harsh rule that would characterize their conclusion to drive forward as an act of negligence *per se.* When the horses began to show great fear, the driver could not turn them around on account of the narrowness of the road and it is reasonable to believe that it would have been a very dangerous and impracticable act had he attempted to stop for the occupants of the surrey to alight. They were in a trap—were suddenly confronted with great danger and, even if it appeared, as it does not, that poor judgment was displayed, we would not hold them accountable in law for losing their heads in a moment of great and imminent peril. [Lang v. Railroad, 115 Mo. App. 489.]

But, for argument, let us assume with defendant, that plaintiff was guilty of negligence which directly contributed to place her in the position of danger. Under the principles of the humanitarian doctrine, the acts of negligence on which her right to recover was predicated, both in the petition and in the instructions given at her request, if found to have occurred, entitled her to a recovery despite her own negligence in entering into danger. The gravamen of the action is the breach on the part of defendant of its humanitarian duty. Its obligation to use reasonable care to ascertain the perilous position of plaintiff and then to make reasonable

use of the means at hand to avoid the injury in no sense depended on the solution of the question of how plaintiff reached that position. Whether careful or negligent, she was there in a place of danger and it was defendant's duty in any event to extricate her, if it could by the exercise of reasonable diligence. A negligent failure to perform this duty supersedes all other acts of negligence and presents itself as the sole producing cause of the injury. [Cole v. Railroad, 121 Mo. App. 605; Ross v. Railroad, 113 Mo. App. 600.]

The demurrer to the evidence was properly overruled. The views expressed answer the criticisms made of the rulings of the court in the giving and refusing of instructions. Contributory negligence being a fact (if it existed) that should not have been permitted to influence a verdict against plaintiff, in submitting such negligence as an issue to the jury in the instructions asked by her, plaintiff assumed a burden greater than she was required to bear and it is immaterial whether or not the rules applicable to her conduct while becoming imperiled were correctly defined.

The case was fairly tried. Judgment affirmed. All concur.