WILL F. PHILLIPS, Respondent, v. SOUTHWEST MISSOURI RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, April 7, 1913.

1. **EVIDENCE: Opposed to Physicial Facts: Courts May Disregard.** Courts are not bound to give credence to the evidence of witnesses which is so opposed to natural law and physical facts as to be manifestly false.

2. **STREET RAILWAYS: Negligence: Action for: Evidence Reviewed: Not an Impossible Verdict.** In an action against a street railway company for injuries to plaintiff occasioned by the conductor negligently letting the car fender fall on plaintiff so as to break his leg, the evidence is reviewed and the court refuses to set the verdict aside as being an impossible finding, clearly against the physical facts and natural laws.

3. ———: ———: **Personal Injuries: Instruction.** In an action against a street railway company for injuries occasioned by the conductor letting the car fender fall on the plaintiff so as to break his leg, it is not error to refuse an instruction that if the fender struck the plaintiff on the shoulder or side, the finding should be for the defendant, when the court had instructed the jury that in order to find for plaintiff the jury must find that the injury to his leg was caused by the falling of such fender.

4. **APPEAL AND ERROR: Reversible Error: Must be Material.** Appellate courts will not reverse a case for error not materially affecting the merits of the case.

Phillips v. Railroad.

5. ———: Refusal of Proper Instruction: May be Harmless Error. In an action against a street railway company alleging injuries occasioned by the conductor letting the car fender fall on plaintiff so as to break his leg and also for an alleged assault upon the plaintiff by the conductor immediately after such injury, where a demurrer to the latter count was sustained at the beginning of the trial, an instruction to the effect that defendant was not liable for injuries received in said fight was a proper instruction and might properly have been given; but its refusal was not necessarily reversible error.

6. ———: Instruction: Refusal of: Harmless Error. Where an instruction to the effect that "defendant is not liable for any injuries by plaintiff in his fight with the conductor" was refused and one was given to the effect that "if the jury find that plaintiff's injuries were received in the fight, then plaintiff is not entitled to recover." *Held*, that, although the refused instruction was proper and should have been given and was somewhat broader in its scope than the one which was given by the court, yet the refusal to so instruct was not reversible error where the case was tried on the theory that the defendant was not liable for any injuries resulting from the assault and it was evident that the jury did not award plaintiff any damages for such injuries.

7. STREET RAILWAYS: Actions for Injuries: Instruction: Modification of. In an action against a street railway company for injuries occasioned by the conductor letting the car fender fall on the plaintiff so as to break his leg, the defendant requested an instruction to the effect that, before the plaintiff could recover the jury must find from the evidence that the conductor knew that the plaintiff was in a position to be struck by the fender at the time he lowered it. The trial court so modified the instruction as to tell the jury that the defendant company was not liable unless the conductor knew, or *by the exercise of ordinary care on his part could have known*, that the plaintiff was in a position to be so struck by the lowering of the fender. *Held*, that such modification was properly made, where the evidence showed that the fender of the car was lowered at the terminus of the railway track where passengers were alighting from the car and passing around that end of the car, the conductor knowing that it was the constant practice for passengers to do so; and such an accident was the probable consequence of the conductor's negligence in lowering the fender.

8. ———: ———: Negligence: Willfulness Not Necessary to Attach Liability. In an action against a street railway company for injuries occasioned by the conductor negligently letting

170 Mo. App.—27

the car fender fall on the plaintiff so as to break his leg, where the negligence complained of is that the conductor did not use ordinary care to discern the danger and avoid the injury, it is in no way necessary to prove willfulness or wantonness on defendant's part in order to establish such negligence.

9. ———: ———: Humanitarian Doctrine: Not Appliacable, When. The humanitarian doctrine has no application to cases which do not involve contributory negligence.

10. STREET RAILWAYS: Liability for Injuries: Instructions: Modification. An instruction requested by the defendant railway company to the effect that the fact that the fender in being lowered struck the plaintiff, "is not any evidence of negligence" was properly modified to say that such fact "is not *in itself* evidence of negligence," as it thus properly told the jury that this fact alone did not prove negligence.

11. ———: ———: ———: Modified Instruction. An instruction requested by the defendant to the effect that, if the jury found from the evidence that "from the character and situation of the fender, and the manner of its coming down, it could not and did not strike plaintiff's leg" was modified by the court by adding the words "*and injure him.*" *Held*, that such addition and modification were proper and that the defendant was not prejudiced thereby as it placed an additional burden upon the plaintiff of proving not only that the fender struck him but that it also injured him.

12. VERDICT: When Set Aside as Excessive. Unless a verdict is so excessively large as to shock the conscience and satisfy the unbiased mind that it was the result of passion and prejudice on the part of the jury, the appellate court will not interfere with it, the trial judge having given it his approval.

Appeal from Jasper Circuit Court. Division Number Two.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1) The court erred in refusing instruction K asked by defendant, and that error is not cured by instruction L given for defendant. They present two entirely different propositions. L is to the effect that if plaintiff's leg was broken in the fight, then he could not recover at all, and K was to the effect that, al-

though his leg may have been broken by the fender, yet if plaintiff received any injuries in the fight he could not recover anything on account of such injuries. The evidence shows plaintiff did receive some injuries in the fight with the conductor. The fight between plaintiff and the conductor occurred after plaintiff ceased to be a passenger, and defendant is not liable and cannot be held for any injuries received in the fight or for damages on account thereof. A master is not liable for a tortious act of his servant done while in the performance of his servient duties, unless the act itself pertains to the service for which he is employed. The mere fact that it is done by the servant with the intention of serving his master is not sufficient to bring it within the scope of his employment. Farber v. Railroad, 32 Mo. App. 378-381; McKeon v. Railroad, 42 Mo. 83; Snyder v. Railroad, 60 Mo. 419; Jackson v. Railroad, 87 Mo. 430; Farber v. Railroad, 116 Mo. 81, 93; McGowan v. Railroad, 61 Mo. 528; Wood's Railway Law, sec. 316; Perkins v. Railroad, 55 Mo. 211; II Nellis on Street Railways, sec. 329, notes 65, 66, 67, 68; Hurt v. Railroad, 94 Mo. 262, 263; Richmond v. Railroad, 144 S. W. 170; Walker v. Railroad, 121 Mo. 575, 584, 588; Burger v. Railroad, 123 Mo. 679-683. (2) The trial court erred in giving plaintiff's first instruction and refusing instructions A and B, as asked by defendant, and by changing defendant's instruction A and B by inserting "or by the exercise of ordinary care on his part could have known," in instruction A, and by inserting the words, "or by the exercise of ordinary care on his part could not have so known," in instruction B and giving said instructions as so amended, and by refusing instruction I, as asked by defendant and by amending said instruction by inserting the words, "or by the exercise of ordinary care on his part could not have known" and then giving it as amended. (a) Unless the evidence, shows, first, the existence of a duty on the part

of the defendant to protect the deceased from the injury of which plaintiff complains; second, a failure by defendant to perform that duty; and, third, an injury to deceased from such failure of the defendant, the plaintiff must fail. To constitute actionable negligence these three ingredients must be shown to co-exist. Wheeler v. Stock Yds. & Terminal Co., 66 Mo. App. 260; Wencker v. Railroad, 169 Mo. 592; Shaw v. Goldman, 116 Mo. App. 332. (b) In an action for negligence it devolves upon the plaintiff to show that there was such connection between the negligent act and the injury as to bring it within reasonable contemplation of the act, or that such injury would naturally and probably result from the act, and that the injury was such as ought to have been forseen as likely to have followed therefrom. Christy v. Huges, 24 Mo. App. 275. (c) Negligence is not the proximate cause of an accident unless under the circumstances the accident was the probable as well as the natural consequence thereof, that is, one that might have been forseen by a man of ordinary intelligence and prudence. Saxton v. Railroad, 98 Mo. App. 494; American Brewing Co. v. Talbot, 141 Mo. 674; Hysell v. Swift, 78 Mo. App. 39. (d) Defendant cannot be held liable unless the injury complained of is the natural and probable consequence of the negligence complained of. Brubaker v. Light Co., 130 Mo. App. 439; Boyd v. Graham, 5 Mo. App. 403; Fuchs v. St. Louis, 167 Mo. 645. (3) There is no evidence of willfullness or wantonness on the part of the conductor in lowering the fender and its coming in contact with plaintiff, and where there is no evidence of willfulness or wantonness on the part of one alleged to have inflicted an injury, the humantitarian rule does not apply. Deane v. Transit Co., 192 Mo. 575; Clancy v. Transit Co., 192 Mo. 615. Zumault v. Railroad, 175 Mo. 288; Moore v. Railroad, 176 Mo. 538; McGauley v. Railroad, 179 Mo. 592; Wilkerson v. Railroad, 140 Mo.

App. 316; Holwerson v. Railroad, 157 Mo. 216; Hodges v. Railroad, 135 Mo. App. 692; Warner v. Railroad, 178 Mo. 125. (4) The court erred in refusing instruction E, as asked by defendant and by inserting therein the words "in itself," and then giving as amended. The fact of an accident and injury is not any evidence of negligence (except in cases where the doctrine of *res ipsa loquitur* applies and that doctrine does not apply in this case). The accident and injury may be the result of negligence, but cannot be any evidence of it. The error in the amendment is that the striking of the plaintiff by the fender is left to the jury to consider in connection with other evidence as evidence of negligence. Jackson v. Mining Co., 151 Mo. App. 644; Warner v. Railroad, 178 Mo. 133-4; Wilkerson v. Railroad, 140 Mo. App. 321. (5) The court erred in refusing instructions F and G, as asked by the defendant and by inserting the words, "and injure him," and giving said instruction as amended over the objections of defendant, and in refusing instruction H asked by the defendant, as plaintiff must recover upon the allegations of his petition and his evidence thereunder. And plaintiff's evidence is all to the effect that the fender struck at the point upon his leg where it was broken. There was evidence introduced by defendant witness Jacobs, that the fender struck plaintiff on the shoulder or body, and if it did, it is a physical fact that it could not have broken his leg just above the ankle. And defendant was entitled to an instruction based on the evidence of witness Jacobs, and it was error to refuse it. Wren v. Street Railway, 125 Mo. App. 604; Cahn v. Reid, 18 Mo. App. 115; Gray v. McDonald, 28 Mo. App. 492; Murray v. Transit Co., 176 Mo. 183, 191; Livingstone v. Ins. Co., 7 Cranch, 506-544; Cahn v. Reid, 18 Mo. App. 116; Ghio v. Railroad, 125 Mo. App. 716; Christian v. McDonnell, 127 Mo. App. 635. (6) An examination of the photographs of the fender attached to the record, and

the evidence in regard to its distance from the rail of the track in its three positions, show that it was a physical impossibility for the fender to have struck plaintiff at the point of his leg where it was broken, or at any point on his leg that could have broken plaintiff's leg at the point thereon that the evidence shows it was broken. And defendant's instructions F and G should have been given as asked, and defendant's instruction H should have been given.    Latson v. Transit Co., 192 Mo. 469.  *Contra,* it would be error to submit a case to the jury resting upon testimony contrary to the physics of the case and to the common knowledge of all men.  Nugent v. Milling Co., 131 Mo. 253; Kelsay v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 566; State ex rel. v. Clifford, 204 Mo. 204; Dunphy v. Stock Yards Co., 118 Mo. App. 522. (7)    The verdict in this case is excessive under the evidence.  Plaintiff only lost two weeks' time and $50 salary, and his medical bill was only $25, and the amount of the verdict can only be accounted for, first, by the refusal of the court to charge that plaintiff could not recover anything on account of the fight with the conductor; second, the wrongful argument permitted to be made by plaintiff's attorney Decker, with its appeals to the passion and prejudice of the jury; third, the bias, passion or prejudice of the jury. (8) The court erred in overruling defendant's objections to the closing argument of attorney for plaintiff and in not sustaining said objections and reprimanding said attorney.  His argument being clearly outside the record and abusive of defendant's employees who were witnesses in the case, by insinuation and *inuendo* and an appeal to the passions and prejudice of the jury and had its effect as shown by the size of the verdict.  McDonald & Co. v. Cash & Hinds, 45 Mo. 66; Gibson v. Zeibig, 24 Mo. App. 65; Miller v. Dunlap, 22 Mo. App. 97; Marble v. Walters, 19 Mo. App. 134; Reeder v. Studt, 12 Mo. App. 566; Ensor v. Smith, 57

Mo. App. 584; Smith v. Telegraph Co., 55 Mo. App. 626; State v. Lee, 66 Mo. 167-8; State v. Kring, 64 Mo. 591; State v. Barham, 82 Mo. 70-71; Thompson v. Barneys, 85 Mo. App. 575; Ritter v. Bank, 87 Mo. 576; Stetler v. Street Railway, 210 Mo. 710; Evans v. Town of Trenton, 112 Mo. 390; Brown v. Swineford, 44 Wis. 282; 1 Thompson on Trials, sec. 955; Haynes v. Town of Trenton, 108 Mo. 133.

*P. D. Decker* and *Walden & Andrews* for respondent.

(1) The first point made by the appellant is that the court erred in refusing to give instruction K. This was not an error because the court had fully covered the point in instruction L, required by the defendant. It is the office of instructions to clearly and concisely present the issues to the jury without unnecessary repetition. Reiteration has a tendency to confuse and mislead by giving undue prominence to certain features of the case and should be avoided; and it is not error to refuse instructions on the matters covered by other instructions. Edgar v. Cupper, 110 Mo. App. 280-285; Culverson v. Maryville, 67 Mo. App. 343. (2) When a proposition of law has once been fairly formulated and given, to turn about and couch it in a different and more learned phrase is but tending to create darkness and obscure the issue. Cytron v. Transit Co., 205 Mo. 692, 718; Wadell v. Railroad, 213 Mo. 8, 18; Porter v. Stock Yards Co., 213 Mo. 372, 380. (2) Instructions a, b, and i, asked by the defendant, were properly modified by inserting "or by the exercise of ordinary care on his part could have known" to all these instructions. Feeney v. Railroad, 123 Mo. App. 420-427; Eswin v. Railroad, 96 Mo. 290; Hanlon v. Railroad, 104 Mo. 381; Jennings v. Railroad, 112 Mo. 268; Cole v. Street Railway, 121 Mo. App. 609; Rodgers v. Transit Co., 92 S. W. 1155; Eppstein v. Railroad,

94 S. W. 967; Ross v. Railroad, 113 Mo. App. 600. (4) The appellant cites numerous authorities, to the effect that it is not negligence to fail to take precautionary measures to prevent an injury, which, if taken, would have prevented it, when the injury could not have reasonably been anticipated, and would not, unless under exceptional circumstances, have happened. None of the cases cited are in point in the facts of this case. Here the conductor jumped off the car, closely followed by several passengers, and he must have known that a large proportion of them would cross in the rear of the car, in the line of danger from being struck, if the heavy steel fender was dropped. There was no occasion for any hurry, and as said in Cole v. Street Railway, 121 Mo. App. 612, "for a motorman to be inattentive to the way ahead of him, is so culpably negligent, that it partakes the nature of a reckless and wanton act." He knew that the heavy steel fender would hit anything in its path, when it fell, and any man, with a grain of ordinary prudence, could have readily anticipated the result, which followed from his careless dropping of the fender, while the passengers were leaving the car, and a grain of ordinary prudence, or respect for the safety of those passengers, would have impelled the conductor to wait and see if any of them were close enough to be struck by the fender, before he dropped the same. (5) The court did not err in refusing instruction E, asked by the defendant, and by inserting the words "in itself," the fact that the fender being lowered struck the plaintiff is not of itself any evidence of negligence on the part of the defendant's conductor, but it is a circumstance, which, taken in connection with the other facts in the case, shows the position of the plaintiff, at the time the fender was dropped, and the effect of it upon him, and tends to establish that the conductor could have reasonably anticipated that the plaintiff would be struck by the falling fen-

der.   (6)   Plaintiff's first instruction required the
jury before it could find for plaintiff, to find that the
fender could strike plaintiff and injure and bruise him
upon the leg and the instructions F and G, asked for
by defendant, as modified by the court, were more fav-
orable to the defendant than in the form requested
because, under all the evidence in the case, and the
pictures themselves, the fender could have struck the
plaintiff at the point of injury, but it was defendant's
contention that the first fall of the fender would leave
the same eleven inches above the ground and that when
the fender tilted to its final position there was not
sufficient force to produce the injuries complained of,
and these instructions told the jury, that they should
find for the defendant unless the fender could not only
hit plaintiff at the place complained of, upon the leg,
but could hit him hard enough to injure him.   (7)  The
court properly refused instruction H, requested by the
defendant, for it is possible that the fender might
have brushed plaintiff on the shoulder or side in its
downward course and then produced the injury com-
plained of by plaintiff, and, under this instruction, if
it had struck plaintiff in its downward course, at these
points, and then broken his leg and injured him as
complained of in the petition, he could not recover.
(8)   It is only when the verdict is excessively large
and so out of line with reason and justice as to shock
the conscience and satisfy the unbiased mind that it
was not the result of the jury's unprejudiced delibera-
tion, that an appellate court will say that the amount
of damages awarded by the jury is excessive and the
result of prejudice, passion and bias.   Townsend v.
Joplin, 139 Mo. App. 402; Langdon v. Weltemer, 180
Mo. 322; Dummitt v. Railroad, 40 Mo. App. 654; Smith
v. Des Moines, 84 Iowa, 685; 15 Am. Dig. 2119, and
cases cited; Johnson v. Railways, 203 Mo. 381; Griffith,
v. Railroad, 98 Mo. 168; Drain v. Railroad, 86 Mo.
574.   (9)   The appellate court will not review objec-

tionable remarks made by counsel in the trial of a case, unless such misconduct of counsel was first called to the attention of the trial court and such court was given an opportunity to reprove counsel and refused to do so.  Schuler, Admr., v. Benevolent Assn., 132 Mo. App. 123.  The trial court, who was present and heard the argument of counsel, refused to grant a new trial on account of the argument of plaintiff's counsel. He was in a better position to see and to know the effect of this argument upon the jury than the appellate court.

STURGIS, J.—The injuries for which plaintiff recovered damages in this case are alleged to have been caused by the negligence of the conductor on one of defendant's street cars in letting the heavy fender of the car fall in such manner as to strike plaintiff's leg, breaking one of the bones between the knee and ankle, and resulting in the injuries sued for in the first count of the petition.  There was originally a second count in the petition, which, in addition to alleging the facts relative to plaintiff's injury by the fender of the street car, also allege that after such injury the conductor on the car, without any excuse and wantonly, assaulted the plaintiff, by reason of which he suffered great pain and mental anguish, humiliation and disgrace, for which he asks both actual and punitive damages.  A demurrer was sustained to this count of the petition and the trial was had on the first count for the injuries negligently inflicted by the fall of the fender.  The answer is in effect a general denial and contributory negligence is not pleaded.

The accident occurred at the terminus of defendant's city car line in the south part of Joplin.  The evidence shows that these cars were equipped with two heavy fenders, one at each end.  The car could thus be run with either end foremost by letting down the fender on the front end and folding up the rear fen-

der against the car. Plaintiff was a passenger on a southbound car, which turned on an east and west street before reaching its terminus. The evidence shows that there was a large population south of the terminus and that a large number of people constantly got off at this point for the purpose of going on southward. When the car turned on the east and west street the rear platform, from which the passengers alighted, was on the north side of the car. This necessitated their going around the end of the car in order to go to the south. At this particular instance the car stopped before the rear end passed the crossing, so that the passengers desiring to go southward after alighting from the car would pass around the end of the car and back to the crossing in order to go to the south side of the street. The evidence clearly shows that larger numbers of passengers alighting at this point would regularly pass around the end of the car in order to cross the street so as to go on southward. In this particular case, when the car stopped at this point, the plaintiff with other passengers alighted from the car at the rear end and on the north side as stated; and as the plaintiff was proceeding to pass around the east end of the car, the conductor let down the fender preparatory to reversing the car and starting it eastward; and in so doing the same struck plaintiff on the leg, resulting in breaking one of the bones and inflicting the injuries for which he sues.

The evidence shows that just after the defendant was injured by this fender, he and the conductor entered into an altercation, resulting in what is generally spoken of by the witnesses as a fight. This occurred in such close connection with the injuries complained of that the facts relative thereto almost necessarily were more or less detailed by the witnesses, although both sides recognized that this matter was not one of the issues to be tried. The plaintiff's version of this phase of the case was that when he somewhat roughly

accused the conductor of trying to injury him, the conductor resented it and without excuse knocked him down and struck him several times about the head. The conductor insisted that the plaintiff was the aggressor and provoked him to strike him.

At the close of plaintiff's evidence the defendant interposed a demurrer, which was overruled; and is insisting here that the physical facts show that plaintiff was not and could not have been injured at the place on his leg and in the manner he was injured by the fender of the car striking him as it was let down. In proof of this the defendant put in evidence protographs, showing the· position of the fender when it was up against the car and how it worked in being let down. Witnesses who were familiar with the working of fenders in being raised and lowered, testified, in connection with their explanation of its working, that in their opinion it would be impossible for the fender in being let down to strike the plaintiff on the leg so low down as a few inches above the ankle, at least with sufficient force to break the bone. The purport of their evidence is that if the fender struck the plaintiff in its downward course it would necessarily be about as high as the knee or higher. The defendant's theory is that the breaking of plaintiff's leg was caused in some manner during the fight. On the.other hand·the plaintiff testified·positively that it was the stroke of the fender in its downward course that broke his leg. The physician who dressed the wound testified that in his opinion the injury was caused by the fall of some heavy object against the leg; and that in his opinion it could not have been caused by his being knocked down or thrown down in the fight. As far as the evidence discloses nothing occurred during the fight that would indicate that plaintiff's leg was or could have broken in that way. Whatever blows plaintiff received were about the head, and all the evidence shows

that the conductor did not kick him or do anything that would result in a broken leg.

The defendant urges that plaintiff's statement that his leg was broken by being struck by the falling fender is so clearly against the physical facts in the case that this court should wholly disregard his evidence and other corroborative evidence to the same effect, and that this case is within the rule laid down in Latson v. Transit Co., 192 Mo. 449, 91 S. W. 109; Nugent v. Milling Co., 131 Mo. 241, 253, 33 S. W. 428; Dumphy v. Stock Yards Co., 118 Mo. App. 506, 522, 95 S. W. 301; and like cases.

We are willing to give full force and effect to the rule laid down in those cases, to the effect that courts are not bound to give credence to the evidence of witnesses which is so opposed to natural law and the physical facts as to be manifestly false. We do not think, however, that this case falls within that rule. It will be useless to set out in detail the evidence *pro* and *con* on this question. We have read the same carefully and are not prepared to say that it is a physical impossibility for a heavy fender in a sudden and violent fall, not stopping until the front end of it came within seven inches of the ground, to have struck plaintiff so as to break his leg several inches above the ankle. Under the evidence as developed here, it would be almost, if not altogether, as incredible to believe that the broken leg was caused by the blows given the plaintiff about the head by the conductor, or in being knocked or thrown down. This was a question for the jury and the jury having found for the plaintiff on this issue, we will not set aside their verdict as being an impossible finding under the evidence as here presented.

In this connection the defendant complains of an instruction which it asked and the court refused, to the effect that if the jury found from the evidence that the fender struck plaintiff on the shoulder or side,

then the finding should be for defendant. Of course if the fender in falling struck the plaintiff on the shoulder or side and this resulted in breaking his leg above the ankle, defendant would be liable, provided there was negligence in lowering the fender. The evident purpose of the defendant in asking this instruction is that, as it would be impossible to break the leg just above the ankle by striking the plaintiff on the shoulder or side, and if the jury should find that he was struck on the shoulder or side, then the injuries complained of could not have resulted therefrom and the finding must be for the defendant. What we have said, therefore, with reference to the fender striking the leg just above the ankle being against the physical facts, disposes of this assignment of error.

The defendant also complains that it was error of the court to refuse its instruction K to the effect that the defendant is not liable for any injuries received by plaintiff in his fight with the conductor. On this point the court gave instruction L, to the effect that if the jury found that plaintiff's injuries were received in the fight, then plaintiff is not entitled to recover. It is evident that instruction K is somewhat broader in its scope than instruction L, in that instruction L only implies that if *all* plaintiff's injuries were received in the fight, then plaintiff could not recover; while instruction K implies that if part of the injuries were received in the fight and part of them from the lowering of the fender, then the jury should exclude from their verdict all injuries received in the fight. Instruction K was a proper instruction under the evidence, but the question here to be determined is whether or not its refusal constitutes material and therefore reversible error. This court is forbidden by statute, as well as by a long line of decisions, to reverse a case for error not materially affecting the merits of the case. [R. S. 1909, sec. 2082; Berkson v. Kansas City Cable Railway Co., 144 Mo. 211, 221, 45 S. W. 1119;

Haniford v. City of Kansas, 103 Mo. 172, 183, 15 S. W. 753; Ivy v. Yancey, 129 Mo. 501, 508, 31 S. W. 937.]

We think the refusal of this instruction is not material to the merits for these reasons: Instruction one, given for plaintiff, and which is the only instruction so given defining defendant's liability and authorizing a verdict for plaintiff, required the jury to find that defendant "carelessly and negligently dropped said fender upon plaintiff and injured and bruised plaintiff's leg;" thus confining the injuries to be recovered for to those inflicted on plaintiff's leg by the dropping of the fender. The plaintiff made no effort whatever to show that he received any injuries in this fight, but on the contrary by his own evidence confined the injuries to those received by being struck on the leg by the fender. The jury were advised throughout the trial in various ways that the court had ruled against the right of plaintiff to recover for any injuries received in the fight, and, knowing this ruling of the court, we are inclined to think they would observe it in making up their verdict just as much as if they had been directly instructed so to do. As before stated all the evidence incidentally brought out at the trial in regard to the fight showed that whatever injuries plaintiff received in the fight were by blows on or about his head, and it was distinctly shown that he was not kicked or any injuries inflicted in the fight on his leg. The only purpose of defendant in showing that the injuries might have occurred in the fight was for the purpose of defeating plaintiff's recovery by showing that his leg was or might have been broken in this manner. The defendant's theory was that covered by instruction L. The speech of one of the attorneys for the plaintiff in his argument to the jury is set out in full for the purpose of showing some objections made by the defendant to his remarks. His argument, however, clearly shows that he stated to the jury that plaintiff was not seeking and was not al-

lowed to recover damages for any injuries received in the fight. We think the jury could not have been and were not misled by the refusal of this instruction.

Under this view of the case it is not necessary for us to decide whether or not the defendant company was liable for the act of its conductor in wantonly assaulting the plaintiff after the plaintiff had alighted from the car and ceased to be a passenger thereon.

Learned counsel for defendant has cited a considerable number of authorities holding that after the relation of carrier and passenger has terminated, that the carrier is not liable even for an unwarranted assault by the conductor on one who has just ceased to be a passenger. Among these authorities are Farber v. Railway, 32 Mo. App. 378, 381; s. c., 116 Mo. 81, 93, 22 S. W. 631; Hendrick v. Railroad, 136 Mo. 548, 38 S. W. 297; 2 Nellis Street Railways, sec. 329; O'Brien v. Transit Co., 185 Mo. 263, 84 S. W. 939; Eads v. Railway, 43 Mo. App. 536. The case was tried on the theory that the defendant was not liable for any injuries resulting from the assault on plaintiff by its conductor. We are satisfied that the jury did not award plaintiff any damages for such injuries.

The defendant also complains of the court's modification of two of its instructions. These instructions are to the effect that before plaintiff could recover the jury must find from the evidence that the defendant's conductor *knew* that plaintiff was in a position to be struck by the fender at the time he lowered the same. The court so modified the instructions as to tell the jury that the defendant was not liable unless the conductor knew *or, by the exercise of ordinary care on his part could have known,* that the plaintiff was in a position to be so struck by the lowering of the fender. Defendant's contention under this point is that the striking of plaintiff is not the natural and probable result of the act of lowering the same; and that de-

fendant could not have reasonably anticipated that plaintiff was in a place of danger and consequently that defendant was not required to guard against the possibility of injuring him. Under this point the defendant cites such cases as Fuchs v. St. Louis, 167 Mo. 620, 645, 67 S. W. 610; Brewing Assn. v. Talbot, 141 Mo. 674, 42 S. W. 679; Holt v. Railway, 84 Mo. App. 674; Brubaker v. Light Co., 130 Mo. App. 439, 110 S. W. 12. Each of the first two of these cases shows such an extraordinary occurrence as not to be comparable to this case. Had the fender come loose in some unexplainable manner and fallen on plaintiff instead of being dropped intentionally by the conductor, then this case would be nearer like the Holt case, supra.

In the Brubaker case, the court, page 448, said: "An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever, of the injury. . . . A natural consequence of an act is the consequence which ordinarily follows it—the results which may be reasonably anticipated from it."

We think this is good law and should be applied to this case. The facts of this case show that just such an accident as this is the natural and probable consequence of the act of negligence on defendant's part in lowering this fender at the time and in the manner shown by the evidence. It is not enough to say that defendant could not have anticipated that this particular man, or any particular man, would be passing around the end of the car just at the time this fender was lowered, so close to the car as to be struck by it. The rule is satisfied if the court and jury could

properly say that the defendant could reasonably have known and anticipated that some person—man, woman or child—was likely to be passing around the car and close enough to it to be struck by the fender at the time it was being lowered; and that the defendant's conductor ought to have taken the precaution to have looked to see whether some person was there or not, or to have given some warning of his intended act in suddenly and violently lowering the fender. As before stated, the defendant's conductor not only knew that it was the constant practice of persons alighting from the cars at this place to pass around the rear end of the same in order to get to the south side of the street, but that at this particular time several passengers were alighting and that some of them would most likely pass that way. The same rule of diligence would apply to the conductor in lowering this fender to see that the way was clear and that he was not lowering it against some one who was likely to be passing at any time, as applies to motormen or other persons driving a car or other vehicle rapidly along a constantly traveled street to keep a vigilant watch to see that he does not unnecessarily run against or over some person or animal or vehicle or anything else that might be found in his way. [Windle v. Southwest Missouri Railroad Co., 153 S. W. 283; Atterberry v. Railroad, 110 Mo. App. 608, 614, 85 S. W. 114; Beall v. Railroad, 97 Mo. App. 111, 71 S. W. 101; Spencer v. Railroad, 90 Mo. App. 91, 94; Feeney v. Railroad, 123 Mo. App. 420, 429, 99 S. W. 477; Eswin v. Railroad, 96 Mo. 290, 297, 9 S. W. 577.]

The defendant, in discussing this phase of the case, seeks to apply the rule applicable in cases defining what is known as the "humanitarian doctrine," and says that there is not any willfulness or wantonness shown on the part of the conductor in lowering the fender. The humanitarian doctrine is not invoked and has nothing to do with this case. That doctrine

was invented as a means of overcoming and excusing the consequences following from contributory negligence. There is no contributory negligence in this case. The question here is one of defendant's negligence in not using ordinary care in seeing the danger and avoiding the injury to plaintiff. In establishing such negligence it is in no way necessary to prove willfulness and wantonness on the part of defendant.

Another assignment of error is that the court erred in modifying defendant's instruction to the effect that the fact that the fender in being lowered struck plaintiff is not any evidence of negligence; the modification consisted in saying that such fact is not *in itself* evidence of negligence. The court had already told the jury that negligence cannot be presumed but must be proven, and this instruction only served the purpose of telling the jury that proof of the fact of the fender being lowered and striking plaintiff would not supply that proof. This criticism is somewhat attenuated. The most natural way of wording an instruction of this character is to say that mere proof of the fact of the injury is not proof of negligence, and this means the same thing as saying that proof of the injury is not in itself proof of negligence. The defendant says that: ''The error in the amendment is that the striking of the plaintiff by the fender is left to the jury to consider in connection with other evidence as evidence of negligence.'' We do not see how the fact of the fender striking the plaintiff can be eliminated from the case, and if left in the case such fact must necessarily be considered along with all the other facts in the case in determining the questiton of negligence. It is part of the *res gestae,* and cannot and should not be eliminated from the case. What the jury was properly told is that this fact alone does not prove negligence.

Equally untenable is the criticism that the court modified two other instructions asked by defendant, to

the effect that if the jury found from the evidence that from the character and situation of the fender, and manner of its coming down, it could not and did not strike plaintiff's leg *and injure* him, then the plaintiff could not recover. The modification consists in adding the words "and injure him." Without this modification the jury were told to find for defendant, provided they found that the fender, on account of its character and manner of working, could not and did not strike plaintiff on the leg; while as modified it tells the jury to find for defendant, provided they find for the same reasons that the fender could not and did not strike and *injure* plaintiff.

This simply added another burden to plaintiff and required him to prove, not only that the fender struck him, but also that it injured him; and we are not able to see how this modification could prejudice the defendant. If the instruction before being modified was intended to mean that before the plaintiff could recover the jury must find that the fender struck his leg at the exact point of the injury, then we think defendant was not entitled to the instruction. It may be possible, and on this the jury knew as much as anyone in the absence of expert evidence, for the fender to have struck the leg a little above or below the exact point of the fracture.

Error is also assigned as to some portions of the argument made by one of plaintiff's attorneys to the jury. A large part of, if not the entire speech of this attorney to the jury is printed in the record for our perusal. It is perhaps a little more fervid and oratorical and abounding in figures of speech and rhetoric than the ordinary argument to juries. We are not prepared, however, to say that the argument so far oversteps the bounds of legitimate argument as to warrant a reversal of the case.

Defendant also says that the verdict of $1500 is excessive. This amount included what the jury al-

lowed for medical attendance and loss of time and wages. Although we might think this verdict is somewhat large, yet, it is the settled doctrine of our courts that we will not interfere with the province of a jury in this respect, unless the verdict is so excessively large and out of reason as to shock the conscience and satisfy the unbiased mind that it was the result of passion and prejudice on the part of the jury. [Townsend v. Joplin, 139 Mo. App. 394, 402, 123 S. W. 474; Longan v. Weltmer, 180 Mo. 322, 79 S. W. 655; Dimmitt v. Railroad, 40 Mo. App. 654.]

This verdict was approved by the learned trial judge, who had a better opportunity of passing on this matter than has this court. [Johnson v. Railroad, 203 Mo. 381, 101 S. W. 641; Griffith v. Railroad, 98 Mo. 168, 11 S. W. 55; Drain v. Railroad, 86 Mo. 574.]

The foregoing leads to an affirmance of the judgment, and it is so ordered. All concur.