JUNIUS BECKWITH, a Minor, by Next Friend, Respondent, v. CITY OF MALDEN, Appellant.

Springfield Court of Appeals, June 26, 1923.

1. **APPEAL AND ERROR:** Showing of Exception to Overruling of Motion for New Trial in Abstract of Record Proper, is Sufficient. Though the abstract of the record proper is not a proper place to

show an exception to the overruling of a motion for a new trial, a showing in such abstract of the exception is sufficient to authorize consideration of the bill of exceptions under Court of Appeals Rule 15, as it existed before the last amendment (187 Mo. App. 462).

2. ———: Contention That Bill of Exceptions Could not be Considered Because Abstract did not Show Exception to Denial of New Trial, Overruled. Plaintiff's contention that questions presented by bill of exceptions could not be considered, because the abstract of the bill of exceptions did not show an exception to the order overruling a motion for a new trial cannot be sustained, where plaintiff did not state as a matter of fact that the bill of exceptions filed with the trial court did not show such exception and it was conceded on argument that it did.

3. ELECTRICITY: Utmost Care Must be Exercised to Insulate Wires with Which Persons May Come in Contact. Those who handle electricity, if reasonably chargeable with knowledge that persons may come within close proximity to the wires, are obliged to use every precaution to insulate the wires in such places and use the utmost care to keep them insulated.

4. ———: Presence of Children in Tree, Which They can Climb, Must be Anticipated. One who stretches a wire charged with electricity through the branches of a tree, which children can climb, must anticipate the presence of children in such tree and is negligent in permitting its wires there to remain uninsulated after knowledge that the insulation was off.

5. ———: Boy Climbing Tree on Railroad Right of Way Used as Path, is not a Trespasser. A boy, who climbed a tree upon a railroad right of way, which was customarily used as a footpath, though not opened as a public way, was not a trespasser as to a city which maintained electric wires passing through the branches of the tree.

6. ———: Boy Injured by Contact With Wire in Tree, Held not Contributorily Negligent as Matter of Law. A boy, who was injured when he climbed a tree and accidentally grasped an uninsulated electric wire instead of a branch, was not contributorily negligent so as to entitle the city, which maintained the wire, to have its demurrer to the evidence sustained.

7. APPEAL AND ERROR: Incompetent Evidence on Issue Proved Without Dispute by Other Competent Evidence, Does not Require Reversal. Even if evidence that electric wires at other places were uninsulated was incompetent to prove knowledge by defend-

ant that the wires at the place in question were not insulated, the admission of such evidence was not reversible error, where there was other competent evidence, which was not disputed, that defendant had knowledge the insulation was off at the place in question.

8. ———: Error in Instructions, not Argued, is Waived. Error in instructions is waived, if not mentioned in points and authorities and not argued.

9. ———:. Defendant cannot Complain of Instruction Imposing Additional Burden on Plaintiff. Defendant cannot complain that plaintiff's first instruction required the jury to find that an electric wire had been uninsulated for some months prior to the injury, under which plaintiff assumed a greater burden than necessary.

10. ELECTRICITY: Tree Need not be Easily Climbed to Require Anticipation of Presence of Children Therein. It is not essential that a tree may be easily climbed in order to require defendant, who maintained an electric wire passing through the tree, to anticipate the presence of children in the tree, but it is sufficient if the tree is one which children can climb.

11. ———: Requirement That Jury Find Injury Occurred Through no Fault of Plaintiff Sufficient. A requirement in plaintiff's instruction No. 1, that the jury find, before plaintiff could recover, that he came in contact with the wire through no fault or negligence on the part of plaintiff, is sufficient reference to contributory negligence.

12. APPEAL AND ERROR: Verdict not Set Aside on Appeal as Excessive, Unless it Shocks the Conscience. Unless the verdict is so excessively large and out of reason as to shock the conscience and satisfy the unbiased mind that it was the result of passion and prejudice, the appellate court will not. interfere.

13. DAMAGES: $5,000 for Permanent Crippling of Right Hand of Eight-year-old Boy, Held not Manifestly Excessive. A verdict awarding $5000 for injury to an eight-year-old boy whose right hand came in contact with an electric light wire, as a result of which the hand was permanently deformed and crippled, was not so manifestly excessive as to require reversal.

Appeal from the Circuit Court of Dunklin County.—
*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*George Smith* and *T. R. R. Ely* for appellant.

(1) In Missouri the courts are refusing to extend the principle of the "turntable" cases and are restricting liability to literal "turntable cases." Kelly v. Benas, 217 Mo. 1; Capps v. City of St. Louis, 158 S. W. 616, and cases cited; Overholt v. Veiths, 93 Mo. 422; Witte v. Stifel, 126 Mo. 295; Schmidt v. Distilling Co., 90 Mo. 295; Smith v. Dold Pkg. Co., 82 Mo. App. 9; Stall v. Tel. Co., 141 Mo. App. 183; Fink v. Railway, 143 S. W. 568; Redenour v. Cable Co., 101 Mo. 27; Williams v. Springfield Gas and Elec. Co., 274 Mo. 1. (2) It was error to permit plaintiff to prove that the insulation was worn off of other wires at other places in the city at the time of the injury. Bowles v. Kansas City, 51 Mo. App. 416; Goodson v. City of Des Moines, 20 N. E. 173; Hipsley v. Railroad, 88 Mo. 349.; Kinney v. Railroad, 70 Mo. 251; Moody v. Railroad, 68 Mo. 470; Lester v. Railroad, 60 Mo. 265; Reed v. Railroad, 60 Mich. 227. (3) The court erred in refusing to give defendant a new trial for the reason that the verdict was excessive. Wagner v. Metropolitan St. Ry. Co., 142 S. W. 463; Davenport v. King Elec. Co., 145 S. W. 454; Parker v. Mo. Pac. Ry. Co., 147 S. W. 489; Riley v. City of Independence, 167 S. W. 1022; Hashert v. Lusk, 177 S. W. 712, and cases cited.

*Casper M. Edwards* and *Sam M. Phillips* for respondent.

(1) In determining whether a bill of exceptions was filed in time, the first day of the thirty days' time must be excluded and the last day included. Brocker v. Grayson, 130 Mo. App. 366; Fulkerson v. Murdock, 123 Mo. 292; Linahan v. Barley, 124 Mo. 560; Graham v. DeGuire, 154 Mo. 88; Rogers v. Wilson, 119 S. W. 369, 220 Mo. 213; R. S. 1919, sec. 7058, 4th sub-division. (2) The record must show affirmatively that the bill of ex-

ceptions was tendered, signed and filed within the time
prescribed by statute, and if it was not filed within the
time prescribed by statute, it will not be considered upon
appeal.    4 Corpus Juris, 61, Note 27; Miller v. New
Madrid Banking Co., 235 Mo. 522, 139 S. W. 192; South-
ern Mo. R. Co. v. Wyatt, 233 Mo. 347, 122 S. W. 688;
Elliott v. Delaney, 217 Mo. 14, 116 S. W. 494; Shemwell
v. McKinney, 214 Mo. 692, 114 S. W. 1083; Eau Claire
Lbr. Co. v. Howard, 76 Mo. 517; Baker v. Loring, 65 Mo.
527; Courtney v. Nat'l Annuity Asso. (App.) 126 S. W.
987; Walsh v. Patterson, 135 Mo. App. 345, 115 S. W.
1027; Wendleton v. Kingery, 110 Mo. App. 67, 84 S.
W. 102; Hugumin v. Hinds, 97 Mo. App. 346, 71 S. W.
479; Biles v. Beadle (App.) 71 S. W. 465; Kirk v. Kane,
97 Mo. App. 556, 71 S. W. 463; Lucas v. Huff, 92 Mo.
App. 369.    (3)    It is the undoubted law in this State
that it must affirmatively appear from the abstract of
the record proper that the bill of exceptions was filed
within the time prescribed by statute; otherwise, nothing
is left for the consideration of the appellate court save
the record proper.   Shemwell v. McKinney, 214 Mo. 692,
114 S. W. 1083; Walsh v. Patterson, 115 S. W. 1027, 135
Mo. App. 345; Southern Mo. & Ark. R. R. Co. v. Wyatt,
122 S. W. 688, 223 Mo. 347; Tucker v. Brown, 123 S.
W. 1009; Courtney v. National Annuity Asso., 126 S.
W. 987; Stonehill Wine Co. v. Buzzard, et al., 127 S
W. 945, 144 Mo. App. 348; Atkins v. Chicago, etc., R. R.
Co., 152 S. W. 1186, 152 Mo. App. 291; State ex rel.
Modern Woodmen of Am. v. Broaddus, 143 S. W. 455,
239 Mo. 359; Wendleton v. Kingery, 110 Mo. App. 67;
Bradbury v. Kerns, 91 S. W. 437, 115 Mo. App. 99;
Hamilton-Brown Shoe Co. v. Williams, 91 Mo. App. 511;
Lucas v. Huff, 92 Mo. App. 369.    (4)    If the bill of ex-
ceptions is not filed within the time prescribed by stat-
ute, it will not be considered, and the appellate court
will only review what appears in the record proper.
Tucker v. Brown, 123 S. W. 1009; Doolittle v. Boyd, 135
Mo. App. 616, 116 S. W. 1121; Baird v. Baird, 113 S. W.

216; Phillips v. Webb City, 129 Mo. App. 699; Cartwright v. Liberty Tel. Co., 205 Mo. App. 126; State v. Clark, 119 Mo. 426.

BRADLEY, J.—Plaintiff, a boy eight years old, sued by next friend to recover for injuries caused by coming in contact with a highly charged wire owned by defendant. The cause was tried before the court and a jury; plaintiff recovered, and defendant appealed.

Plaintiff alleged that the defendant negligently permitted an uninsulated primary electric light wire carrying 2300 volts to pass through the branches of a tree easily accessible and attractive to children, and that plaintiff was injured while up in said tree by coming in contact with said wire. The answer was a general denial, and a plea of contributory negligence.

Defendants city owns and conducts its light plant. Nor for from the plant primary wires carrying 2300 volts each passed through the branches of a sycamore tree from eighteen to twenty-four inches in diameter and about thirty feet high. The wires were about eighteen feet from the ground. A board fence four feet high, stood about two feet north of this three. The tree stood on the right of way of the St. Louis-Southwestern Railway Company, at a place generally used by the public as a passageway, but was not a dedicated street or alley. The first limb was about nine feet from the ground, but below that was the stub of a limb which has been sawed off. Plaintiff lived with his mother about 500 feet north of the tree. On August 10, 1920, the day plaitniff was injured, he and other boys were playing "Chase," and plaintiff climbed upon the board fence, and thence into the tree. He climbed up where the wires were and slipped. "Q. What did you do when you got up there? A. Slipped and started to fall. I then started to grab a limb, I grabbed hold of an electric light wire. No, sir I did not know the wire was up there before I went up there. No, sir, no one ever told me that it was there

before I went up. When I slipped and started to fall I thought I was grabbing hold of a limb, I did not know the wire was there until I grabbed hold of it.'' There was evidence tending to show that the defendant city knew through its officers that the insulation on the portion of the wires passing through this tree had rubbed and whipped off by contact with the branches, and that such had been the condition for a long time prior to plaintiff's injury. Defendant offered no evidence, but stood on its demurrer at the close of plaintiff's case.

Defendant assigns error on the overruling of its demurrer, on the instructions, the admission of evidence, and an alleged excessive verdict.

Before proceeding to the merits we will dispose of plaintiff's contention that there is nothing before us but the record proper. This contention is based on the fact that the abstract of the bill of exceptions before us does not show an exception to the order overruling the motion for a new trial. Absent our construction of Rule 15 plaintiff would seem to have reasonable ground upon which to base his contention. In Walls v. Tinsley, 187 Mo. App. 462, 173 S. W. 19, we liberally construed Rule 15. There it is said: ''Under our rules, if the abstract of the record, taken as a whole and including what is shown by the bill of exceptions, shows the timely filing and overruling of the motion for new trial and an exception saved thereto, and it is therein stated that the appeal was duly taken and the bill of exceptions duly filed that is sufficient.'' Robertson v. Robertson, 178 Mo. App. 478, 163 S. W., 266, by this court is substantially to the same effect. Plaintiff's contention, cannot be sustained for two reasons. First, because the exception mentioned is shown in the abstract of the record proper. This is not a proper place to show such exceptions, but under Rule 15 it is permissible. In the second place plaintiff does not say as a matter *fact* that the bill of exceptions filed with the clerk of the trial court does not show an exception to the order overruling the motion for a

new trial. It was conceded on argument that the bill of exceptions filed with the clerk of the trial court *does in fact* show such exception. Under our Rule 15 and our construction thereof in the Walls and Robertson Cases, supra, we rule against plaintiff's contention. We might say here that we have, subsequent to the submission of this case, amended Rule 15 by striking out the proviso thereto, and adding a new proviso in the exact language of the second paragraph of Rule 13 of our Supreme Court.

Plaintiff also moved to dismiss because defendant did not file its bill of exceptions in time, and did not serve abstracts and brief in time; but this point was abandoned at the argument.

Defendant contends that its demurred to the evidence should have been sustained, because, as it is claimed, the evidence does not show that the tree was attractive or that it was easy to climb, and that the facts do not justify the inference that defendant city should have anticipated that boys would likely climb this tree and be injured by uninsulated wires. Defendant further contends that the evidence does not tend to show that the officers of the city had or should have knowledge of the condition of this wire: By using the fence this tree was easily climbed. The fence was four feet high. The lowest limb was nine feet from the ground, but below that, how far is not stated, was the stub of a limb. Plaintiff climbed the tree without difficulty. As to the tree being attractive to children there is no direct evidence in the record. It stands among a number of other trees, some of which are over in the yard of Mr. Morris north of the board fence, and some just outside as is the tree in question. There is no evidence that boys had theretofore climbed this particular tree, but there was evidence that some of the trees over in the yard had been frequently climbed by boys. Mr. Morris testified that his children and others frequently played in the vicinity of this tree. There was substantial, and considerable

evidence, and not contradicted, tending to show that the defendant had knowledge that the insulation was off these wires where they passed through these trees, and had been for several months before plaintiff's injury. The trees were in plain view of the light plant, and not over three hundred feet away, and there is evidence that it is less than three hundred feet. The former superintendent of defendant's plant having reference to the tree plaintiff climbed and the others near by, through which the light wires passed testified: "These trees had given us trouble at the plant, you might say practically ever since I was there. Yes, sir, this tree had given me trouble at the plant, about four trees had. In the springtime when the leaves had come out and the wind would blow, the limbs would bend over and cause a short, and we would have to go up and take those limbs off so they wouldn't touch our wires. Yes, sir, that is the way that I found out that the insulation was off these wires. Yes, sir, the insulation was off during the entire time I was superintendent. No, I was only superintendent about eighteen months, but worked there about three years and eight months. Well, every time there came a rain in the spring of the year we could see sparks in those trees; that meant to me that the limbs were coming in contact with those wires. Yes, sir, that indicated to me that the insulation was off the wires." This witness testified on cross examination that a "right smart while" before plaintiff was injured he called to the attention of the mayor and board of aldermen the fact that "the insulation was off those wires." However, he further stated that he did not call their attention to "that particular place," but to the condition all over town.

Those who handle electricity, if reasonably chargeable with knowledge, or of facts making it reasonably probable that persons may lawfully come into close proximity to the wires for purposes of business or pleasure are obligated to use every precaution to insulate the

wires at such places and to use the utmost care to keep
them insulated. [Williams v. Gas & Electric Co., 274
Mo. 1, l. c. 8, 202 S. W. 1, and cases there cited.] In
the Williams Case the court gave recognition and ap-
proval of the rule of law that a company stretching
electric wires in a city through trees like. the evidence
in that case tended to show, and as the evidence in the
case at bar tends to show, must take notice of boyish
impulses and anticipate the presence of children in such
trees. The facts in the instant case are similar to the
facts in the Williams Case. In that case the injured
boy climbed from a house roof into the tree through the
branches of which the electric wires passed. In the
instant case plaintiff climbed from a board fence. The
tree in the Williams Case was no more attractive as a
tree to climb than is the tree in the present case. In
the Williams Case the court approved and applied the
principle announced in Temple v. Elec. Co., 89 Miss. 1,
42 So. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep.
698, 10 Ann. Cas. 924. Speaking to that point the court
in the Williams Case said: ''That principle, so far as
this case in concerned, is that electric companies which
stretch wires through trees which ' children can climb
must anticipate the presence of children in such trees
and govern themselves accordingly. Everybody knows
that boys will climb trees. It is the probability of their
presence there which brings trees within the general
rule of Geismann v. Elec. Co., supra, the rule is not that
only such boys are protected as may *climb from the
ground* into a tree. The thing required to be anticipated
is *the presence* of children in the tree.''

The Williams Case also settles adversely to defend-
ant its contention that plaintiff was a trespasser, and
guilty of contributory negligence. It is not necessary
to restate the law applicable here. It is fully stated in
the Williams Case, and cases there cited. Defendant's
demurrer was properly overruled.

Defendant contends that it was reversible error to

permit plaintiff to prove that the insulation was off other wires and at other places in the city. This evidence was offered and admitted on the theory that it would be some evidence tending to prove knowledge by the city officials of the defective condition of the wire that injured plaintiff. The unchallenged evidence offered by plaintiff tending to show knowldge of the defective condition of the wire that injured plaintiff is not contradicted. Defendant offered no evidence on this question or any other. Therefore, if it be conceded that the evidence challenged was incompetent, it would not constitute reversible error, provided there was other competent, substantial evidence to prove such knowledge. [Julian v. Calkins, 85 Mo. 202; Okeefe v. United Rys. Co., 124 Mo. App. 613, 101 S. W. 1114; Lindauer v. Meyberg, 27 Mo. App. 181.]

The court gave 5 instructions requested by plaintiff. Defendant challenges all these in its motion for new trial, and in its formal assignments of error, but in its brief proper only the first one is challenged. Where an appellant in his points and authorities and in his argument makes no complaint about instructions, the point is waived. [Allen v. Quercus Lumber Co., —Mo. App. —, 190 S. W. 86.] The first complaint made against instruction number 1 is that it requires the jury to find that the wire had been uninsulated for some months prior to the injury. Plaintiff was not required to prove that the insulation had been off "some months," although that expression is used in the instruction. Plaintiff assumed more than required, and defendant cannot complain. Defendant says the instruction is bad because of the language with reference to the tree. Predicating other preceding facts the instruction continues: "And that said tree was adjacent to a publicly used thoroughfare and easily accessible to children, and that said tree was so situated and of such character and growth that the same could, with the aid of an adjacent fence, if any, be climbed by children," etc. According to the law as written in the Williams Case, supra, defendant

cannot complain successfully of this language. Defendant urged that the instruction should have gone no further than to say that "if the tree could have been easily climbed," etc. We quoted, supra, from the Williams Case that electric companies which stretch wires through trees which children *can* climb must anticipate the presence of children in such trees and govern themselves accordingly. Defendant further contends that the instruction ignores the defenses of contributory negligence, and that plaintiff was a trespasser. The instruction required the jury to find before plaintiff could recover that he came in contact with the wire "through no fault or negligence on the part of the plaintiff." This is sufficient. The tree was not on defendant's property, hence the Williams Case answers squarely and adversely to defendant the question of plaintiff being a trespasser. Defendant says that the instruction is broader than the evidence, and assumes facts not proven. These complaints are without merit. We have carefully examined plaintiff's instruction number 1 on the several grounds upon which it is challenged. We do not think it contains error, and learned and diligent counsel for defendant have not cited a single case to support their contention that the instruction is erroneous.

It is contended that the verdict for $5000 is excessive. Plaintiff's most severe burn was on his right hand. He was immediately taken to Dr. Dalton who dressed the injured hand. Plaintiff's mother testified that he suffered from the 10th of August until the middle of November; that the flesh decayed and had to be taken off the hand; that the end of the second finger became infected, and that the nail comes off and leaves the bone bare; that this occurred the last time in June, 1922; that plaintiff can't do any work with his hand; that she had him try to pick cotton, and he could not. The second finger is drawn down at the first joint from the knuckle, or at the second, we are not certain which, so that the end of the finger stands at about a right angle with the

remainder. Dr. Beall who first treated plaintiff on August 24th after the injury testified that the flesh of the hand was rotten, that the palm and palm surface of the fingers were involved; that on the tip of one and possibly two fingers was charred and dead bone; that the tendons were not entirely burned through; that he treated plaintiff daily from August 24th until September 11th, and that such an injury would be "painful, very painful," that such a shock would be very severe to the nervous and muscular system; that the injury to the hand is permanent. That "it will cripple the hand and he will not use the arm quite so much, and wouldn't be quite so strong as it would be otherwise." Dr. Beall further stated that the second finger should be taken off, but that wherever severed, at a joint, or the whole finger removed, the hand would be weakened. There was also a burn on plaintiff's back, but this burn was not so severe as the one to the hand. The cause was tried December 1, 1922, more than two years after the injury, and speaking of the condition on the day of trial Dr. Beall said that the finger and palm were permanently injured. "Yes, sir, this second finger is crooked and permanently stiff and deformed. The palm of the hand is permanently scarred, part of the tissue is gone, and it is replaced by scar tissue. No sir, that hasn't the strength or movement that natural tissue has. The tendons are bound down in scar tissue. Yes, sir, they have been permanently injured and crippled. Yes, sir, the fact is his right hand is permanently injured and crippled."

Unless the verdict is so excessively large, and out of reason as to shock the conscience and satisfy the unbiased mind that it was the result of passion and prejudice, the appellate court will not interfere. [Phillips v. Railroad, 170 Mo. App. 416, 155 S. W. 470.] Plaintiff at the time of his injury was eight years old. The evidence shows that he is a bright boy. He learns easily. His life is before him. Whatever he encounters he must

meet it conscious of the fact that he has a deformed, crippled hand. Boyhood cannot be to him what it is to the normal boy. At every turn he is handicapped. This much the evidence shows. What man's estate will bring in the way of handicap and mental anguish no one can foresee. We do not believe that we would be justified in holding that the verdict is excessive. [Laemore v. Lohrack, — Mo. App. —, 248 S. W. 639.] The judgment should be affirmed, and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.