JOSEPH A. THORNTON, RESPONDENT, v. UNION ELECTRIC LIGHT AND POWER COMPANY, A CORPORATION, APPELLANT.—72 S. W. (2d) 161.

St. Louis Court of Appeals. Opinion filed June 5, 1934.

*Theodore Rassieur, George M. Rassieur, John P. McCammon, Jr.*
and *Alfred C. Wilson* for appellant.

*Hay & Flanagan* for respondent.

SUTTON, C.—This is an action to recover damages for personal injuries. The trial, with a jury, resulted in a verdict for plaintiff for $7,500, and judgment was given accordingly. Defendant appeals.

The accident through which plaintiff sustained the injuries sued for occurred on U. S. Highway No. 61, on March 12, 1932, at a point about two miles south of Bonne Terre, in St. Francois county.

The petition alleges that prior to March 12, 1932, defendant had erected poles along the west side of said highway near the tops of which poles cross arms were fastened to carry defendant's wires which were heavily charged with electricity; that in order to provide support for said poles, defendant had erected and maintained other wooden poles known as anchor poles on the right of way of said highway a few feet east of the paved portion thereof, and had run guy wires from the poles on the west side of said highway across and above said highway to said anchor poles, said guy wires being stretched taut causing a great strain to be placed on said poles; that said guy wires were fastened near the tops of the poles on the west side of said highway so that they were within a few feet of said high tension wires; that said anchor poles were located on curves on said highway, and that defendant knew, or by the exercise of the highest degree of care would have known, that numerous automobile accidents occur on said highway, and that frequently automobiles and trucks ran off the cement slab of said highway and upon and against poles stationed

642

along the right of way of said highway, and particularly at curves in the highway, and that said poles were thereby likely to be knocked down or broken, and that defendant knew, or by the exercise of the highest degree of care would have known, that in the event of any of said anchor poles being so knocked down or broken, the guy wire running from the pole on the west side of said highway to such anchor pole would be likely to come in contact with defendant's high tension wires, and that, unless said overhead guy wire was insulated there was great danger, in the event of said pole being knocked down and broken, that persons who might come in contact with said guy wire might be electrocuted or sustain serious electrical burns and other injuries due to said guy wire becoming charged with electricity by coming in contact with said high tension wires; that although defendant knew, or by the exercise of the highest degree of care would have known, all these facts, the defendant negligently failed and omitted to insulate said guy wires, and negligently caused and permitted said wooden anchor poles to be placed and to remain on the right of way of said highway within a few feet of the paved portion thereof, and negligently caused and permitted said guy wires to run over and across said highway without insulation; that on the date aforesaid an automobile truck ran off the paved portion of said highway at a point about two miles south of Bonne Terre, in St. Francois county, and struck and collided with one of the anchor poles aforesaid, causing said poles to be broken and a guy wire running from the pole carrying defendant's high tension wires on the west side of said highway to the said anchor pole on the east side of said highway to come in contact with said high tension wires with the result that said guy wire and another pole became heavily charged with electricity; that shortly after said collision plaintiff being nearby went to the scene of said accident in order to assist the driver of said truck, and while he was on the right of way of said highway he came in contact with said guy wire causing the electricity with which said guy wire was charged to pass into and through plaintiff's body, whereby he was caused to sustain serious and permanent injuries, all as a direct and proximate result of the negligence of the defendant, as aforesaid.

The evidence shows that on March 12, 1932, about 1:30 o'clock in the afternoon, one Ed Hartle, accompanied by another man named Kelly, was driving a Chevrolet truck, loaded with furniture, southward on U. S. Highway 61, two miles south of Bonne Terre. While the truck was rounding a right-hand curve, running at a speed of thirty to thirty-five miles per hour, it suddenly and without warning, for some unknown reason, left the concrete pavement, and ran against an anchor pole on the east side of the highway. The pole was struck with such force that it was broken in two. The lower part of the pole remained in the ground. The upper part, near the top of which the

guy wire was fastened, was completely severed. The top part, however, did not immediately fall. It remained in an upright position, resting upon or against the top of the truck. The guy wire was not broken. Neither Hartle nor Kelly was hurt. They promptly got out of the truck and began gathering up pieces of furniture which had been thrown out of the truck by the collision. Within about ten minutes after the wreck, plaintiff arrived at the scene of the accident. He went over to the truck to render Hartle and Kelly such assistance as he could. He had been there a short times when the top part of the anchor pole slipped or fell from its position to the ground bringing the guy wire with it. The guy wire in falling struck plaintiff on the shoulder, and he was shocked from the electricity with which the guy wire was charged by reason of coming in contact with the high tension wires strung on the poles on the west side of the highway. Plaintiff when struck with the guy wire fell to the ground unconscious, and suffered serious injuries. He was taken to a hospital in Boone Terre, where he received treatment.

The guy wire was intended and used to strengthen and support the pole on the west side of the highway, on which the transmission wires were strung, against the strain placed on it by reason of the curve in the highway. The guy wire was fastened to this pole between two cross arms. The cross arms carried transmission wires which were heavily charged with electricity, carrying 33,000 volts. These high tension wires were uninsulated. As the guy wire fell and struck plaintiff, it also fell upon the uninsulated live wires on the lower cross arm, and thus became charged with electricity. The concrete pavement at the place where the accident happened was eighteen feet wide. The highway right of way was sixty feet wide. There was a dirt shoulder on the east side of the highway eight feet wide. The anchor pole was located at a point fifteen feet from the edge of the concrete pavement and seven feet from the dirt shoulder. The anchor pole was a thirty-five foot pine pole. The line pole, that is, the pole that carried the transmission wires, was a forty-five foot pole. There was about thirty feet clearance between the concrete pavement and the guy wire over the highway. The guy wire was uninsulated. Strain insulators are sometimes used in guy wires. Strain insulators are made of porcelain, and are nonconductors of electricity. Such an insulator is put into the guy wire, and becomes a part of the wire like a link in a chain.

There was evidence on the part of the defendant tending to show that transmission wires carrying 33,000 volts cannot be insulated; that strain insulators are impracticable in guy wires when the line carries more than 15,000 volts, and that in such case the approved method of construction is to ground the guy wire and provide a circuit breaker at the station which would automatically shut off the elec-

tricity in the event the line is grounded, and that this transmission line was so constructed and equipped.

Defendant assigns error here upon the refusal of its instruction in the nature of a demurrer to the evidence, and urges that the instruction should have been given because no negligence on the part of defendant was shown proximately resulting in plaintiff's injury.

It is elementary law that an act alleged as causing an injury, for which recovery of damages is sought, must be shown to be the proximate cause of the injury to warrant a recovery. This does not mean, however, that the act complained of must be the immediate cause, the direct, or the last or nearest cause in time or distance to the consummation of the injury, but it must be the nearest independent cause which is adequate to and does produce the injury, that is to say, it must be the immediate or direct cause in the sense that it is a cause between which and the injury no new and independent cause intervenes to break the continuity. If, however, the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original act and the injury. It is not requisite that the person committing the original act could or might have foreseen the particular consequence, or the precise form of the injury, or the particular manner in which it occurred, or that it would occur to the particular person. It is only requisite that in the exercise of due care he could or might have foreseen or anticipated that some injury might result. In other words, if a person does an act, and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen, and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury. [Daneschocky v. Sieble, 195 Mo. App. 470, 193 S. W. 966; Northern Oil Co. v. Vandervort, 228 Mich. 516; Ahern v. Oregon Telephone Co., 24 Óre. 276; Kenney v. Wong Len, 81 N. H. 427; Walter v. Missouri Portland Cement Co. (Mo.), 250 S. W. 587; Wilborn v. Desloge Consolidated Lead Co. (Mo. App.), 268 S. W. 655; Smith v. St. Joseph Railway Light, Heat & Power Co. (Mo.), 276 S. W. 607; Hohimer v. City Light & Traction Co., 218 Mo. App. 138, 262 S. W. 403; McLeod v. Linde Air Products Co. (Mo.), 1 S. W. (2d) 122; Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, 120 S. W. 766; Rueter v. Terminal R. Ass'n (Mo. App.), 261 S. W. 713; Willis v. Buchanan County Quarries Co., 218 Mo. App. 698, 268 S. W. 102; Murrel v. Smith, 152 Mo. App. 95, 133 S. W. 76.]

Electricity is a most subtle and dangerous agency. It lurks unsuspected in the simple and harmless wire, and gives no warning of its deadly presence. Wherefore, it is uniformly held that an electric

company employing wires highly charged with this subtle and violent agency in streets, highways, or other public places, is in duty bound either to insulate such wires or place them beyond the range of contact with persons rightfully using such streets, highways, or places, and to exercise the utmost care to keep them so. [Ryan v. St. Louis Transit Co., 190 Mo. 621, 89 S. W. 865; Godfrey v. Kansas City Light & Power Co., 299 Mo. 472, 253 S. W. 233; Williams v. Springfield Gas & Electric Co., 274 Mo. 1, 202 S. W. 1; Shannon v. Kansas City Light & Power Co. (Mo.), 287 S. W. 1031; Hohimer v. City Light & Traction Co., 218 Mo. App. 138, 262 S. W. 403; Thompson v. City of Slater, 197 Mo. App. 247, 193 S. W. 971; Beckwith v. City of Malden, 212 Mo. App. 488, 253 S. W. 17; Laudwig v. Central Missouri Power & Light Co. (Mo.), 24 S. W. (2d) 625; Fisher v. New Bern, 140 N. C. 506; Mitchell v. Raleigh Electric Co., 129 N. C. 166; Newark Electric Light & Power Co. v. Garden, 78 Fed. 74; The Village of Palestine v. Siler, 225 Ill. 630; McLaughlin v. Louisville Electric Light Co., 100 Ky. 173, 37 S. W. 851; Griffin v. United Electric Light Co., 164 Mass. 492; Temple v. McComb City Electric Light & Power Co., 89 Miss. 1; Fox v. Village of Manchester, 183 N. Y. 141; Duncan Electric & Ice Co. v. Chrisman (Okla.), 157 Pac. 1031; Sheffield Company v. Morton, 161 Ala. 153; Trammell v. Columbus R. Co., 9 Ga. App. 98; Hebert v. Lake Charles Ice, Light & Waterworks Co., 111 La. 522.]

In the present case the defendant's guy wire was strung over and across the highway, so that if it should fall by reason of the breaking of the anchor pole or becoming detached therefrom, it would necessarily fall across the highway and at the same time come in contact with the high tension wires on the transmission line and become charged with the deadly voltage carried by these wires, and thus endanger the lives of persons rightfully upon the highway. If it be true, as defendant says, that its wires carry such a high voltage of electricity that they cannot be insulated, then this is all the more reason why it should have used every accessible precaution to so construct and maintain its line and support its wires as to prevent them from coming in contact with persons rightfully upon the highway. It is a matter of common knowledge that the primary highways of this State, constituting the main arteries of travel, such as is U. S. Highway 61, carry a continuous flow of vehicular traffic, consisting of all sorts of motor vehicles, many of them running at high rates of speed, and that it frequently happens that some of such motor vehicles, getting out of control from one cause or another, run off the pavement onto one side or the other of the highway, and, of course, collide with whatever objects, stationary or otherwise, may happen to be in their way. It is also a matter of common knowledge that such accidents are most likely to occur at curves in the highway, and that the sharper

the curves the greater is the danger of such accidents. U. S. Highway 61 has many curves, and defendant maintains a guy wire and anchor pole at each of these curves, and the guy wire and anchor pole involved here were located at one of these curves. In addition to this, the pavement at this place was constructed on a fill so that the surface of the highway on the side where the anchor pole was located was lower than the pavement. It thus appears that the place was peculiarly adapted to invite just such an accident as the evidence shows occurred. Moreover, the evidence shows that it was a frequent occurrence for automobiles using highway 61 to run off the concrete pavement and collide with defendant's poles previous to the accident involved in this suit. These collisions occurred within a few miles of Bonne Terre. One of these collisions was with a pole located about twenty-five feet from the pavement, and the automobile crossed a ditch before striking the pole. Another was with a pole located about twenty feet from the pavement, and the automobile crossed a ditch about five feet deep before striking the pole, and when the automobile struck the pole two cross arms at the top of the pole were broken. Another was with the anchor pole involved in this suit.

We think that plaintiff made out a submissible case. It was for the jury to say whether or not defendant, in the exercise of the utmost care and foresight, ought to have anticipated that a collision of a motor vehicle with one of its anchor poles, resulting in the breaking down of the pole, was likely to occur.

The cases of Clinkenbeard v. City of St. Joseph, 321 Mo. 71, 10 S. W. (2d) 54, and Mississippi Power Co. v. Sellers, 160 Miss. 512, 133 So. 594, cited and relied on by defendant, are clearly distinguishable from the case at bar, because, in the cited cases, the plaintiffs, who were driving automobiles, were injured by collisions of the automobiles with poles located off the traveled roadway or pavement, whereas the plaintiff in the present case was injured by a guy wire, charged with a deadly current of electricity, which was caused to come down on the highway and become so charged by reason of the anchor pole to which it was fastened being broken by the collision of a motor truck with it. The negligence of defendant charged as entitling plaintiff to a recovery was not the location of its anchor pole on the highway. The gist of the negligence charged was the maintenance by defendant of its uninsulated guy wire over and across the highway fastened on the east side to an anchor pole, which the defendant knew, or in the exercise of the highest degree of care, ought to have known, was likely to be broken down by the collision of an automobile therewith, thereby causing the guy wire to become charged with electricity by contact with the uninsulated transmission wires, and, being so charged, to fall upon the highway, and thus endanger the lives of persons using the highway.

Defendant complains of instruction No. 4, given on behalf of plaintiff, as follows:

"You are instructed that it is negligence for a carrier of electricity to maintain high voltage wires capable of causing injury or death, along a public highway, where persons on such highway are likely to come within their danger, without insulating them. It is no defense that such wires cannot be insulated, if such be the fact. In that event, it is the duty of such carrier to adopt some other method of transmitting its current."

This instruction attempts the statement of an abstract proposition of law. It is uniformly held that the giving of an instruction correctly stating an abstract proposition of law applicable to the case made on the facts is not reversible error when the instruction is accompanied by other instructions applying the law to the facts. But the trouble with this instruction is that it does not correctly state the law as applicable to the case made on the facts. It tells the jury that as a matter of law it was negligence for the defendant to maintain its high voltage wires along the public highway, without insulating them, and that it is no defense that such wires could not be insulated, without regard to the fact, shown by all the evidence, that the wires were so placed and maintained as not to endanger persons rightfully using the highway except for the occurrence of an intervening cause, such as the collision of an automobile with one of its anchor poles, and without regard to whether or not defendant ought to have anticipated that such intervening cause was likely to occur. There was no evidence that the wires as placed and maintained along the highway were in such position that persons rightfully using the highway were "likely to come within their danger." All the evidence was to the contrary. It was only in the event of the breaking down of an anchor pole through the occurrence of an intervening cause that persons on the highway would become endangered by the uninsulated wires, and the defendant was guilty of no actionable negligence in so placing and maintaining its wires, unless in the exercise of the highest degree of care it ought to have anticipated as probable the occurrence of such intervening cause. So, the instruction eliminates the one essential to convict the defendant of negligence, that is, that the defendant should have anticipated the occurrence of such intervening cause, and convicts defendant of negligence for having maintained its wires along the highway, without insulating them, and tells the jury, in effect, that it is no defense to plaintiff's case that the wires could not be insulated, though defendant in the exercise of the highest degree of care and the utmost foresight could not reasonably have anticipated the occurrence of such intervening cause. The instruction is clearly erroneous.

The commissioner recommends that the judgment of the circuit court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded. *Becker* and *McCullen, JJ.*, concur; *Hostetter, P. J.*, not sitting.